Jason D. Haymore 13236
Pearson Butler & Carson
1802 South Jordan Parkway, STE 200
South Jordan, UT 84095
(p)801-495-4104
JasonH@PearsonButler.com

**IN THE THIRD DISTRICT COURT – SALT LAKE**
**STATE OF UTAH**

| | |
|---|---|
| RORY CORONA,<br><br>    Plaintiff,<br>vs.<br><br>SALT LAKE CITY SCHOOL DISTRICT; LARRY MADDEN, in his official and individual capacities, and BRYAN GARRITSON, in his official and individual capacities.<br><br>    Defendant. | **COMPLAINT**<br><br>Case No.:<br><br>Honorable Judge: |

  Plaintiff Rory Corona (herein "Plaintiff" or "Mr. Corona") by and through undersigned counsel, hereby files this complaint seeking petition for judicial review from a final agency action with the Salt Lake City School District (herein the "District" or "Defendant") and for relief resulting from a violation of his Fourth Amendment Rights under the United States Constitution. For its' complaint, Plaintiff alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

  1. Plaintiff is an individual who resides in Salt Lake City, Utah. Mr. Corona's address is 333 I Street, Salt Lake City, UT 84103, however Plaintiff should only be contacted regarding this matter by and through undersigned counsel. Plaintiff was the petitioner in the administrative hearing held before the Salt Lake City School District.

Page **1** of **8**

2. Defendant is a Utah School District in Salt Lake County, Utah, organized pursuant to Utah Code Ann. § 53G-3-101 et. seq. The address for Defendant is 440 East 100 South, Salt Lake City, UT 84111. Defendant was the Respondent in the in the prior administrative hearing.

3. Defendant Larry Madden ("Madden") is the Principal of Bryant Middle School and had official responsibilities for the administration of the drug and alcohol testing programs of the District.

4. Defendant Bryan Garritson (Garritson) is the Director of Human Resource Services for Salt Lake City School District and had official responsibilities for the administration of the drug and alcohol testing programs of the District.

5. The court has jurisdiction to hear the appeal of the administrative hearing held by the Salt Lake City School District over this matter pursuant to Utah Code Ann. § 78A-5-102, Utah Code Ann. §78A-4-103(2)(b), and Utah Code Ann. §63G-4-402.

6. Venue is proper in this court pursuant to Utah Code Ann. §78B-3-307.

## FINAL AGENCY ACTION

7. The final agency action at issue is titled "Decision" and a true and accurate copy of the order is attached hereto as Exhibit A.

## FACTS

8. Mr. Corona was a licensed public educator with career status at Bryant Middle School for approximately twenty-four years.

9. Bryant Middle School is a school in the Salt Lake City School District.

10. Prior to the 2017-2018 school year, Mr. Corona was never made aware of any time when his work performance did not meet the reasonable satisfaction of his employers.

11. Mr. Corona was given a teaching assignment to work in a Child Behavior Therapy Unit ("CBTU"), which is the most restrictive placement possible for students who have significant behavior disorders.

12. The CBTU underwent major changes in staffing and structure in the 2017-2018 school year. This involved new teachers, and new collaborative efforts with the psychology department of the University of Utah.

13. Defendant did not provide Mr. Corona with any additional support or training for the CBTU assignment and most all of the processes and procedures for the program were being determined and implemented throughout the course of the year with the support of the University of Utah.

14. Mr. Corona was assigned a paraprofessional, who assisted with the class on a daily basis. Her name is Alysia Paradise ("Ms. Paradise").

15. The CBTU unit was an extraordinarily difficult classroom to manage.

16. On December 7, 2017, Larry Madden (" Madden"), principal for Bryant Middle School, met with Mr. Corona and discussed some concerns he had. Madden asked Mr. Corona to complete Individual Education Plans ("IEP's") for six of his students and to work closely with parents and document conversations with them.

17. On January 24, 2018, Madden again met with Mr. Corona and reviewed largely the same concerns he had shared with Mr. Corona on December 7, 2017.

18. On February 28, 2018, Madden presented Mr. Corona with a written reprimand because Madden felt like Mr. Corona had not satisfactorily addressed the concerns that were raised on December 7, 2017 and on January 24, 2018.

19. On March 2, 2018, Madden provided Mr. Corona with a Collaborative Intervention Plan ("CIP"). The plan indicated that Mr. Corona needed to create daily lesson plans, follow the leveled system, and complete IEP's.

20. By the time of his termination, Mr. Corona had created and followed daily lesson plans, followed the level system, and was nearly complete with all IEP's.

21. On April 9, 2018, Nancy Paramore ("Paramore"), Special Education Consultant for the Salt Lake City School District, visited Mr. Corona's classroom just before lunchtime and reported to Madden that she believed Mr. Corona smelled of alcohol.

22. On April 9, 2018, at 7:00am, Mr. Corona had been in a meeting with Madden, and four other individuals, in a small room, sitting around a small table. None of the attendees of the meeting noticed any odor of alcohol from Mr. Corona. And none of the attendees noticed anything unusual about Mr. Corona's behavior.

23. Mr. Corona taught his classes all morning alongside his paraprofessional, Ms. Paradise. Ms. Paradise did not notice any odor of alcohol and did not notice any difference in Mr. Corona's behavior.

24. After Madden heard Paramore's allegation that Mr. Corona smelled of alcohol, he sent Matt Smith ("Smith") to talk to Mr. Corona. Mr. Smith reported back to Madden that he believed he could also smell alcohol emanating from Mr. Corona.

25. Madden then filled out a form entitled "Reasonable Suspicion Drug/Alcohol Test Record." Madden noted only one cause for suspicion on the form – "Odor of Alcohol."

26. There is absolutely no evidence that Mr. Corona was impaired in any way by any substance other than the allegation that he emanated the odor of alcohol.

27. Defendant's drug and alcohol testing policies related to teachers allow for reasonable suspicion drug and alcohol testing, but do not provide for random testing.

28. Mr. Corona was then summoned to Madden's office where he was told that he would be subject to drug and alcohol testing.

29. Mr. Corona was forced to participate in taking a portable breathalyzer test which indicated that Mr. Corona had a blood alcohol content level of .05 and .046.

30. Despite there being no basis for belief that Mr. Corona was under the influence of any substance, Mr. Corona was then forced to submit to a urinalysis.

31. The decision to force Mr. Corona to submit to the urinalysis was made by Madden and Garritson.

32. A urinalysis is not a test which screens for the presence of alcohol. It screens instead for controlled substances.

33. After submitting to the urinalysis, Mr. Corona was forced to submit medical records to the testing facility to confirm prescriptions for any substance found in his urine.

34. Ultimately, there was no allegation that the urinalysis revealed the presence of any unauthorized or illegal controlled substance.

35. After Mr. Corona was subjected to the portable breathalyzer test and the urinalysis he was placed on administrative leave.

36. On April 12, 2018, the District provided Mr. Corona a Notice of Allegations and Request for a Written Response. The document contained three allegations: (1) having alcohol in

his system at school, (2) failure to follow required procedures for storing and administering student medication, and (3) insubordination for having not completed all IEP's.

37.     On April 17, 2018, Mr. Corona was presented with a Notice of Termination alleging that he was fired because of "coming to work under the influence of alcohol", failing to follow correct procedure in properly storing and administering student medications, and insubordination because not all IEP's were completed.

38.     Defendant's policy regarding the administration and storage of student medication states that three individuals must be designated who will be responsible for administering medications to students. It also requires that the District provide training to these individuals.

39.     Defendant did not follow their policy regarding administration and storage of student medications in that it did not designate three individuals or provide training to anyone regarding the storage and administration of medication to students.

## FIRST CLAIM FOR RELIEF
Appeal from Administrative Decision

40.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein.

41.     Plaintiff has exhausted all administrative remedies prior to filing this action.

42.     The Decision is a final administrative order.

43.     Plaintiff is entitled to a De Novo review from this court pursuant to Utah Code Ann. 63G-4-402(1)(a).

44.     The administrative Decision of the District is in error because of the reason and facts set forth in this complaint, and in at least the following ways:

   a. The hearing officer erroneously found that there was "adequate evidence that Mr. Corona was under the influence of alcohol." There is in fact no evidence to suggest that alcohol impaired Mr. Corona in any way, shape, or form.

   b. The hearing officer erroneously found that having "some alcohol in his system" was enough to be a violation of district policy or the ethical standards found in R277-515.

   c. The hearing officer erroneously found that Mr. Corona "should have known that he was responsible for providing general health services . . . to a student with an IEP." Defendant was in violation of its own policy in this regard by failing to provide training and failing to designate three individuals who were responsible for providing the medication.

   d. The hearing officer erroneously applied the constitutional protections of proportionality and consistency with regard to Mr. Corona's termination. Mr. Corona's termination is both not proportionate to the conduct alleged, and not consistent with the past practices of the District.

   e. The hearing officer erroneously found a basis for termination of Plaintiff in the allegation that he failed to provide a free and appropriate public education ("FAPE") when no such allegation was presented to him prior to his termination.

45. Plaintiff respectfully asks the Court to reverse the Decision and order that Plaintiff be paid all back wages, attorney's fees, costs, and be reinstated in his employment.

**SECOND CLAIM FOR RELIEF**
-Asserted Against all Defendants-
Violation of the Fourth Amendment
Unlawful Search and Seizure
Cognizable Under 42 U.S.C. § 1983

46.	Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein.

47.	Both the portable breathalyzer test and the urinalysis that Mr. Corona was subject to constitutes a search for purposes of the Fourth Amendment to the United States Constitution.

48.	There were no grounds to establish any type of suspicion or justification that would make it reasonable to force Plaintiff to succumb to a search and seizure of his urine.

49.	As a result of the unlawful search and seizure, plaintiff has been damaged in an amount to be established at trial.

50.	Plaintiff is entitled to recover his damages from Defendants.

## **PRAYER FOR RELIEF**

**Wherefore**, Petitioner prays for the following relief:

a) A judgment reversing the order issued by the administrative agency below,
b) An order requiring Defendant to pay full back wages, attorney's fees, costs, and for reinstatement.
c) For damages related to the violation of Mr. Corona's Fourth Amendment Rights in an amount to be determined at trial.
d) And for and other relief as this Court deems just and proper.

DATED this 30 day of July, 2018.

PEARSON BUTLER & CARSON PLLC

/s/ Jason D. Haymore
Jason D. Haymore (13236)
Attorney for Plaintiff